UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JAMES WHATLEY,                          )
                                        )
                    Petitioner,         )
                                        )
        v.                              )        No. 2:18-cv-00062-JRS-DLP
                                        )
RICHARD BROWN,                          )
                                        )
                    Respondent.         )

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORUPUS**

Petitioner James Whatley was convicted of murder in an Indiana state court. Mr. Whatley

now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that there is insufficient

evidence to support his murder conviction and that his trial and appellate counsel rendered

ineffective assistance of counsel in several respects. However, the Indiana Court of Appeals

reasonably applied federal law in Mr. Whatley's direct and post-conviction appeals. Therefore, his

petition for a writ of habeas corpus is **denied**, and a certificate of appealability will not issue.

## I.
## Background

Federal habeas review requires the Court to "presume that the state court's factual

determinations are correct unless the petitioner rebuts the presumption by clear and convincing

evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C.

§ 2254(e)(1). In its opinion affirming denial of Mr. Whatley's petition for post-conviction relief,

the Indiana Court of Appeals summarized the relevant facts as follows:

> In the early morning hours of August 22, 2007, Whatley's girlfriend Debra Bigham
> drove Whatley and Ciera Pedrey to the Relax Inn in Indianapolis. The women
> waited in Whatley's car at the back of the motel while Whatley went to a room on
> the second floor to deliver crack cocaine. When he had not returned after about ten

minutes, Bigham honked the horn. Apparently, Whatley had fallen asleep inside the motel room because he had been using cocaine and not sleeping for several days.

Shortly thereafter, Bharat Patel, the owner and manager of the motel, approached the women with a flashlight and angrily demanded that they leave. This was not the first time that Patel had ordered Bigham and/or Whatley to leave the premises, which they frequented for illegal purposes. As Bigham explained that she was waiting for a friend, Patel picked up a rock and threw it at her. Bigham then drove to the front of the motel and sent Pedrey to get Whatley. As Pedrey walked toward the motel, Patel came around, picked up a beer bottle, and threw it at her, chasing her back to the car. Patel then hit the hood of the car and the windshield before Bigham and Pedrey drove away. Patel called the police to report the trespass around 2:00 a.m.

Bigham drove to a nearby gas station and called Whatley. She indicated that Patel had attacked her again and that she would not return to the motel to pick up Whatley. Instead, she agreed to meet him in a drive-in parking lot next to the motel. Whatley showed up several minutes later out of breath. He hurriedly directed Bigham into the passenger seat and as he sat in the driver seat, he stated: "Baby, you don't have to worry about it no more. He's not…going to f*** with you no more." Whatley then asked Bigham and Pedrey to check on Patel.

The women went up an exterior stairway and found Patel lying motionless on his back on the second-floor balcony. Bigham shook Patel's leg but could not wake him. About this same time, IMPD Officer Conrad Simpson arrived at the motel in response to Patel's earlier call. As the women descended the stairs, they notified the officer that Patel needed help. Officer Simpson found Patel breathing but unresponsive with a laceration on the back of his head and blood coming out of one ear. Patel's right hand was clinched around a set of keys and a cordless phone and flashlight were near his body.

Patel suffered a large contusion to the back left-side of his head with an associated skull fracture and brain injury. He never regained consciousness and died in the hospital about a month later once life support was removed. An autopsy revealed that Patel's death was caused by a blunt force injury to the back of his head. In the opinion of the pathologist, Dr. Kent Harshbarger, the injury was consistent with Patel falling and striking his head on the ground.

On September 20, 2007, Bigham gave a statement to police regarding the events in question. In addition to providing many of the facts as set out above, she indicated that Whatley picked her and Pedrey up from the gas station after they were permitted to leave the scene. He then told Bigham that he had struck Patel in the head two times with his fist.

Shortly after Patel's death, Christina Wilson – a resident of the motel – came forward as an eyewitness in the case. On the night in question, Wilson came upon a heated confrontation between Patel and two individuals that were inside a vehicle, and then she hurried toward her room on the second floor on Patel's direction. Wilson watched from her doorway as Patel came upstairs and pounded on a door. She observed a black male come out of another room and walk up to and hit Patel, who immediately fell backward to the concrete floor. Wilson could not see whether the man used his fist or an object. After striking Patel, the man turned and walked down the stairs and around the building. Wilson could not identify the man but provided a general description.

On September 25, 2007, the State charged Whatley with murder. Specifically, the State alleged that Whatley knowingly killed Patel "by striking with his fists at and against [Patel], thereby inflicting mortal injuries upon [Patel]".

While in the Marion County Jail, Whatley spoke about his case with another inmate, Lonnie Carson, in the spring of 2008 and showed him related documents. Carson sent a letter to the prosecutor in early May 2008. According to Carson, Whatley indicated he struck Patel once in the back leftside of the head with a hammer and then went through Patel's pockets. Whatley also told Carson that there were three female witnesses that he wanted to "disappear if at all possible." Further, Whatley told Carson that he was concerned he left a footprint at the scene so he burned the shoes along with the hammer.

Whatley's two-day jury trial commenced on August 25, 2008. Wilson, Bigham, and Carson were among the witnesses for the State. Despite Carson's reference to a hammer, the State proceeded under the theory that Whatley approached his unsuspecting victim and forcefully struck him once or twice with his fist, knocking Patel backward to the concrete ground. At trial, the State used Carson's testimony to show that Whatley admitted striking Patel and characterized the reference to the hammer as bragging by Whatley. In addition to aggressively cross examining the witnesses in an attempt to discredit them, Whatley's trial counsel also requested an instruction on involuntary manslaughter, a lesser included offense.

*Whatley v. State*, 86 N.E.3d 236, 2017 WL 2291328, *1–2 (Ind. Ct. App. May 25, 2017)

(*Whatley II*) (record citations omitted).

Mr. Whatley was convicted of murder and sentenced to sixty years. *Id.* On direct appeal, he challenged the sufficiency of the evidence and the admission of evidence regarding drug use and dealing. *Whatley v. State*, 908 N.E.2d 276 (Ind. Ct. App. 2009) (*Whatley I*). The Indiana Court

of Appeals affirmed Mr. Whatley's murder conviction, and the Indiana Supreme Court denied his petition for transfer. Dkt. 14-2 at 4.

Following his direct appeal, Mr. Whatley filed a petition for post-conviction relief in state court. He asserted that both his trial and appellate counsel provided ineffective assistance in several respects. *See generally Whatley II*, 2017 WL 2291328. The trial court denied Mr. Whatley's petition following a hearing, and the Indiana Court of Appeals affirmed. *Id.* at *9. The Indiana Supreme Court denied Mr. Whatley's petition to transfer. Dkt. 14-3 at 10.

Mr. Whatley filed the instant petition for a writ of habeas corpus on February 9, 2018. He alleged that (1) the evidence was insufficient to support his conviction of murder; (2) trial counsel was ineffective for failing to object to three jury instructions, parts of Carson's testimony, and the prosecutor's statements during closing argument; and (3) appellate counsel was ineffective for failing to raise those issues on appeal and failing to adequately present the sufficiency argument. Dkt. 2.

After reviewing the record and the parties' briefs here, the Court concluded it was in the interests of justice to appoint counsel pursuant to 18 U.S.C. § 3006A(a)(2). Dkts. 27, 30. On June 2, 2020, appointed counsel filed an amended petition. The amended petition incorporated Mr. Whatley's previous arguments and added additional allegations: that trial counsel was ineffective for failing to present a plea offer to Mr. Whatley, for failing to adequately investigate his case, and for preventing Mr. Whatley from testifying at trial. Dkt. 45. The respondent filed a return to the amended petition, dkt. 47, and Mr. Whatley responded, dkt. 48.

## II.
## Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts

5

rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103).

If the last reasoned state court decision did not adjudicate the merits of a claim, or if the adjudication was unreasonable under § 2254(d), federal habeas review of that claim is *de novo*. *Thomas v. Clements*, 789 F.3d 760, 766–68 (7th Cir. 2015).

### III.

### Discussion

Mr. Whatley raised three grounds for relief in his pro se habeas petition: (1) the state presented insufficient evidence to convict him of murder, (2) ineffective assistance of trial counsel based on four instances of deficient performance, and (3) ineffective assistance of appellate counsel based on four corresponding instances of deficient performance. Appointed counsel added three additional allegations of ineffective assistance of trial counsel in Mr. Whatley's amended petition.

### A.  Sufficiency of the Evidence

The Supreme Court provided the standard for sufficiency of the evidence claims in habeas petitions in *Jackson v. Virginia*, 443 U.S. 307 (1979). In that case, the Court explained that evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis original). "[H]abeas reviews of *Jackson* claims are subject to two levels of judicial deference creating a high bar: first, the state appellate court determines whether any rational trier of fact could have found the evidence sufficient; second, a federal court may only overturn the appellate court's finding of sufficient evidence if it was objectively unreasonable." *Saxon v. Lashbrook*, 873 F.3d 982, 987–88 (7th Cir. 2017). "Federal review of these claims . . . turns on whether the state court provided fair process and engaged in reasoned, good-faith decisionmaking when applying *Jackson*'s 'no rational trier of fact' test." *Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1999).

Mr. Whatley argues that the state did not prove that he possessed the requisite intent for murder.[1] To prove Mr. Whatley committed murder, the state was required to show that Mr. Whatley "knowingly or intentionally kill[ed]" Mr. Patel. *Whatley I*, at 284 (citing Ind. Code 35-42-1-1). Mr. Whatley alleges the evidence shows that he was at most guilty of involuntary manslaughter, a lesser included crime of murder. A person commits involuntary manslaughter if he "kills another human being while committing or attempting to commit . . .battery." Ind. Code 35-42-1-4.

In addressing this challenge to the sufficiency of the evidence, the Indiana Court of Appeals correctly articulated the *Jackson* standard. *Whatley I*, 908 N.E.2d at 282. It then reviewed the evidence against Mr. Whatley and concluded that a reasonable jury could have convicted him of murder, explaining:

> The jury was instructed on murder and on the lesser included offense of involuntary manslaughter. The jury determined from the facts presented to it that Whatley was guilty of murder. According to the evidence, Whatley struck Patel with a hammer or two times with his fist. At the time that Whatley struck Patel, Patel did not have his arms up and was not in a defensive posture. Whatley told Bigham that Patel was "not going to f—— with [her] no more," and that Patel "will never mess with [Bigham] and never attack [her] again." Transcript at 86, 120. The pathologist who performed an autopsy testified that Patel died from "blunt force injury with associated skull fracture and then associated injury to the brain." *Id.* at 174. The pathologist also testified that "a significant amount of force" was required to produce the fracture to Patel's skull and the impact contusions to Patel's brain. *Id.* at 174–175. Patel's blood was found on three different parts of the flashlight, including the lens, the handle, and the strap. DNA analysis revealed that another individual's blood was commingled with Patel's blood on certain portions of the flashlight, but the analysis did not provide a positive identification of that individual. Given the facts of the case, we conclude that the State presented evidence of probative value from which a reasonable trier of fact could have found Whatley guilty beyond a reasonable doubt of murder.

---

[1] In his direct appeal, Mr. Whatley raised two additional grounds in support of his sufficiency of the evidence claim—that Indiana's "incredible dubiosity" rule applied, and two of the prosecution's witnesses were not credible. Mr. Whatley does not pursue these arguments in his habeas petition.

*Id.* at 284–85.

The Court agrees that a rational trier of fact could have viewed the evidence as a whole and concluded that Mr. Whatley had the required knowledge or intent to murder Mr. Patel. "To 'knowingly' kill requires, at a minimum, awareness on the part of the defendant of a high probability that death will result from his actions." *Williams v. State*, 749 N.E.2d 1139, 1141 (Ind. 2001). "[A]n intent to kill may be inferred from a single blow," and a jury can consider a variety of factors to infer knowledge or intent to kill—including the use of a deadly weapon, the nature of the attack and circumstances surrounding the crime, the duration, brutality and relative strengths of the defendant and victim, and repetitious blows of magnitude. *Nunn v. State*, 601 N.E.2d 334, 339 (Ind. 1992). Several of these factors were present here, including evidence of multiple blows, Mr. Patel not having a defensive posture, and Mr. Whatley's incriminating statements to Bigham after the incident. The Indiana Court of Appeals' analysis of this issue was reasonable, and Mr. Whatley is not entitled to relief.

**B. Ineffective Assistance of Counsel (Original Petition)**

Mr. Whatley next asserts claims of ineffective assistance of trial and appellate counsel. A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). For a petitioner to establish that "counsel's assistance was so defective as to require reversal," he must make two showings: (1) that counsel rendered deficient performance that (2) prejudiced the petitioner. *Id.* "This inquiry into a lawyer's performance and its effects turns on the facts of the particular case, which must be viewed as of the time of counsel's conduct." *Laux v. Zatecky*, 890 F.3d 666, 673–74 (7th Cir. 2018) (citation and quotation marks omitted). "As for the performance prong, because it is all too easy

to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight, *Strickland* directs courts to adopt a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 674 (citation and quotation marks omitted). "The prejudice prong requires the defendant or petitioner to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

Upon reviewing the post-conviction court's denial of Mr. Whatley's petition, the Indiana Court of Appeals correctly stated the *Strickland* standard. *Whatley v. State*, 86 N.E.3d 236, 2017 WL 2291328, *3 (Ind. Ct. App. May 25, 2017). Where the alleged instance of ineffective assistance of trial counsel overlapped with a claim against appellate counsel, the court addressed them together. This Court will do the same as it proceeds to address each instance of alleged ineffective assistance.

1. Jury Instructions

Mr. Whatley contends that his trial counsel performed deficiently when he failed to object to final jury instructions seven and eight and failed to adequately object to instruction ten, and that appellate counsel was ineffective for failing to challenge the instructions on appeal.

Mr. Whatley argues instructions seven and eight precluded the jury from considering involuntary manslaughter because the instructions essentially indicated to the jury that it could consider involuntary manslaughter only if it first found Mr. Whatley not guilty of murder. Mr. Whatley relies on *Roberson v. State*, 982 N.E.2d 452 (Ind. 2013). In that case, the jury instruction indicated that the jury could only consider convicting the defendant of voluntary manslaughter if it first found him not guilty of murder. *Id.* at 460. That was error because of a

10

unique feature of Indiana's voluntary manslaughter statute, which shares all the elements of murder but also requires the State to disprove the existence of sudden heat. *Id.* But in Mr. Whatley's case, "[t]he element distinguishing murder from involuntary manslaughter is what the defendant intends to do—kill or batter." *Whatley II*, 2017 WL 2291328 at *5. Thus, "[u]nlike when voluntary manslaughter is at issue, once the jury determined that Whatley knowingly killed Patel there was no additional consideration (such as, the absence of sudden heat) to finding Whatley guilty of murder." *Id.* The post-conviction appellate court concluded that—as a matter of state law— neither trial nor appellate counsel performed deficiently because any objection to instructions seven and eight would have failed. *Id.* This Court cannot question an Indiana court's application of Indiana law. *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016) (citing *Estelle v. McGuire*, 502 U.S. 62, 67−68 (1991)). Accordingly, Mr. Whatley is not entitled to relief with respect to instructions seven and eight.

Mr. Whatley next challenges final instruction ten, which he contends created the type of mandatory presumption regarding intent prohibited by *Sandstrom v. Montana*, 442 U.S. 510 (1979). In *Sandstrom*, the trial court told the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts," but did not tell the jury that the presumption could be rebutted. *Id.* at 512. The instruction therefore replaced the State's obligation to prove *mens rea* with a requirement of proving only that the defendant's actions were voluntary. *Id* at 514–24.

Here, instruction ten stated:

An individual who inflicts injury upon another is deemed by law to be guilty of homicide if the injury contributed mediately or immediately to the death of the other person. In order for an intervening cause to break the chain of criminal responsibility, it must be so extraordinary that it would be unfair to hold the defendant responsible for the actual result. A defendant is said to have contributed

11

mediately or immediately to a death when he has put in motion a series of events
ultimately ending in the Victim's death.

*Whatley II*, 2017 WL 2291328 at *5. The Indiana Court of Appeals recognized the *Sandstrom*
holding. *Id.* It held that instruction ten did not violate *Sandstrom* because the instruction dealt with
causation and intervening causes but said nothing about intent or any other essential element of
the charged offense. *Id.* The court found that "no reasonable juror could have understood this
instruction as a mandatory presumption on the element of intent." *Id.* Accordingly, Mr. Whatley's
trial counsel was not ineffective for failing to make a stronger record when he objected to
instruction ten, nor was appellate counsel ineffective for not raising it on appeal.

This was a reasonable application of *Sandstrom*. "It is well-established that 'a single
instruction to the jury may not be judged in artificial isolation, but must be viewed in the context
of the overall charge.'" *Benefiel v. Davis*, 357 F.3d 655, 662 (7th Cir. 2004) (quoting *Boyd v. United
States*, 271 U.S. 104, 107 (1926) and citing *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)). The
jury was properly instructed on the elements of murder and involuntary manslaughter, the
definition of "knowingly," and that all the instructions must be considered together. Appellant's
App'x at 68–69, 80, 86. Viewing the instructions as a whole, the Court agrees that no juror would
have interpreted instruction ten as creating a mandatory presumption on the element of intent.
Mr. Whatley's trial and appellate counsel were "not ineffective for failing to raise meritless
claims." *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013).

2. Carson's Testimony

Mr. Whatley contends that his trial counsel performed deficiently when he failed to object
to Lonnie Carson's testimony that Mr. Whatley told him he had hit Mr. Patel with a hammer.
Because the state charged Mr. Whatley with hitting the victim with his fist, he argues that evidence

12

that he struck the victim with a hammer should have been excluded. The Indiana Court of Appeals held that defense counsel's overall strategy was to challenge the credibility of the state's witnesses and that trial counsel may have strategically decided against objecting to the hammer testimony because it contradicted the state's theory of the case that Mr. Whatley struck the victim with his fist. After all, Mr. Carson's testimony on this point was not consistent with the eyewitness testimony or any other evidence presented at trial. Thus, the appellate court reasoned, the mention of a hammer may have weakened Mr. Carson's credibility with the jury. *Whatley II*, 2017 WL 2291328 at *6. The appellate court also found that the state proceeded under the theory that Mr. Whatley struck Mr. Patel once or twice with his fist and "characterized the reference to the hammer as bragging by Whatley." *Id.* at *2. The court concluded, "Given the overall defense strategy was to challenge the credibility of the State's lay witnesses (i.e. Carson, Bigham, and Wilson), we cannot say that trial counsel's failure to object to the hammer reference was so deficient or unreasonable as to fall outside of the objective standard of reasonableness." *Id.* at *6.

It could be argued the Indiana Court of Appeals' reasoning on trial counsel's performance demonstrates a strained reading of the record. While it is true that trial counsel's strategy was to attack the credibility of the state's witnesses, trial counsel never drew the jury's attention to the inconsistency of Mr. Carson's version of events on cross examination or in his closing argument. *See* Tr. 265–66, 307–09. Rather, trial counsel emphasized that Mr. Carson had a lengthy criminal record and was going to possibly receive a sentence modification in exchange for his testimony. *Id.*; *see also* PCR Tr. at 61 (trial counsel testifying that strategy is generally to impeach the credibility of jailhouse snitches). And although the state did not explicitly argue that Mr. Whatley used a hammer instead of his fists, on direct appeal, the court considered the hammer testimony as

evidence that the state had proven Mr. Whatley had committed murder. *See Whatley I*, 908 N.E.2d at 284–85 ("According to the evidence, Whatley struck Patel with a hammer or two times with his fist.") (citing *Williams*, 749 N.E.2d at 1141, for the proposition that jury could infer intent from evidence that victim was hit with a hard object).

The Court need not decide whether the state court unreasonably adjudicated the performance prong, though, because Mr. Whatley has failed to demonstrate prejudice. The other factors highlighted by the Indiana Court of Appeals on direct appeal—Mr. Whatley's statement to his girlfriend that he struck Mr. Patel twice and would not "f--- with her no more," eyewitness testimony that Mr. Patel was struck without provocation, the blood-stained flashlight, the nature of Mr. Patel's skull injury—all supported Mr. Whatley's murder conviction. Mr. Whatley has not shown a reasonable probability that the outcome of his trial would have been different had trial counsel successfully suppressed any testimony about the hammer, and he is not entitled to relief on this issue.

The Indiana Court of Appeals further found that Mr. Whatley had waived his argument that appellate counsel was ineffective for not raising this evidentiary issue on appeal as fundamental error because he failed to develop any analysis on the issue. *Whatley II*, 2017 WL 2291328 at *5, n.5. This Court will not review a question of federal law decided by a state court if that decision rests on state law grounds that are independent of the federal question and adequate to support the judgment. *Walker v. Martin*, 562 U.S. 307, 315 (2011). Waiver is one such issue. *See Richardson v. Lemke*, 745 F.3d 258, 270–71 (7th Cir. 2014). Accordingly, Mr. Whatley cannot obtain relief with respect to appellate counsel's decision not to raise this issue on direct appeal.

14

3.  Prosecutorial Misconduct

Mr. Whatley next argues that trial counsel was ineffective for failing to object to improper comments made by the State during closing argument. He argues the prosecutor "consistently and repeatedly told the jury that Whatley knowingly killed Patel," made statements of personal opinion unsupported by evidence, and directed the jury to not allow Mr. Whatley to go free. Dkt. 2 at 21−22.

The Indiana Court of Appeals held that neither trial counsel nor appellate counsel performed deficiently for failing to challenge the prosecutor's statements because they were not objectionable. *Whatley II*, 2017 WL 2291328 at *6–7. First, it observed that the state's repeated references to Mr. Whatley knowingly killing Mr. Patel were proper because it was the state's burden to prove Mr. Whatley's intent, and the statements fairly characterized the state's evidence. *Id.* at *6.

Next, the court discussed the prosecutor's statements about various circumstances where people wear helmets to protect their head from injury because people know that head injuries have a high probability of leading to "bruising and contusions and blood in the ventricles" and other serious injury. Tr. 317. Mr. Whatley argued the statements were not supported by any evidence. The appellate court found those statements were proper because "jurors are expected to apply common sense and draw upon their accumulated background knowledge and experience when considering the evidence." *Whatley II*, 2017 WL 2291328 at *7.

The court concluded, "None of the specific examples argued by Whatley were cause for an objection by trial counsel." *Id.* The appellate court's determination that counsel was not ineffective

for failing to raise meritless objections was reasonable, and Mr. Whatley is not entitled to relief on this issue.

4. <u>Evidence of Intervening Cause of Death</u>

Mr. Whatley next alleges that trial counsel was ineffective for failing to present evidence of an intervening cause of Mr. Patel's death. He asserts that trial counsel should have elicited this testimony from either an independent expert or by appropriately cross-examining the state's expert, forensic pathologist Dr. Kent Harshbarger.

At trial, Dr. Harshbarger testified that Mr. Patel's cause of death was "blunt force injury with associated skull fracture and then associated injury to the brain." Tr. 174. The blunt force injury was consistent with Mr. Patel hitting his head on the concrete. *Id.* at 175–76, 180–81. While Mr. Patel was in the hospital, he suffered a "large infarctus stroke of the left hemisphere of the brain, probably from the swelling," and he also developed pneumonia and severe pulmonary edema. *Id.* at 177, 180. Dr. Harshbarger attributed the stroke, pneumonia, and edema as resulting from the head injury. *Id.* at 180.

Mr. Whatley did not present any evidence from an independent expert during post-conviction proceedings to show some intervening cause of Mr. Patel's death. He did call Dr. Harshbarger as a witness, but the pathologist was unable to testify about anything of substance because Mr. Whatley's post-conviction counsel failed to provide him with his autopsy report or any other relevant evidence from the trial. PCR Tr. 35, 74. Trial counsel also had little memory of his course of investigation because post-conviction counsel did not subpoena his file. *Id.* at 57, 64. As a matter of practice, trial counsel would have reviewed Dr. Harshbarger's autopsy report along with any medical records and cross-examined Dr. Harshbarger on a "wide range of questions." *Id.*

at 64. Indeed, trial counsel questioned Dr. Harshbarger about the medications Mr. Patel was prescribed, whether he had been tested for drugs or alcohol in his system, and other matters. Tr. 183–94.

The Indiana Court of Appeals found that the "evidence regarding Patel's cause of death was clearly established at trial" and rejected Mr. Whatley's "unsupported and self-serving opinion that Patel's stroke was likely independent of the head injury." *Whatley II*, 2017 WL 2291328 at *8. This was a reasonable application of *Strickland*. Where the cause of death is an issue at trial, counsel no doubt has a duty to investigate alternative explanations of the victim's death. *See Dunn v. Jess*, --- F. 3d ---, 2020 WL 6883423, at *7–8 (7th Cir. Nov. 24, 2020). *Dunn*, a factually similar Seventh Circuit case, involved a man who was convicted of felony murder after he slapped a drunk bar patron, causing the victim to fall and hit his head on the pavement in the parking lot. The court found that trial counsel performed deficiently by failing to review exculpatory medical reports and failing to call a forensic pathologist with whom he had conferred to challenge the state medical examiner's theory of the victim's death. *Id.* Trial counsel's decision was not strategic because it was based on a misapprehension of the medical examiner's opinion. *Id.* But here there is no evidence that trial counsel ignored exculpatory medical evidence or that Dr. Harshbarger's medical opinion was unsound. Mr. Whatley is not entitled to relief on this issue.

5. Failure to Present a Well-Argued Sufficiency Claim

Mr. Whatley's final claim of ineffective assistance of appellate counsel was that appellate counsel failed to raise the sufficiency of the evidence claim well. "The general *Strickland* standard governs claims of ineffective assistance of appellate counsel as well as trial counsel." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015).

The Indiana Court of Appeals first reviewed appellate counsel's sufficiency argument. *Whatley II*, 2017 WL 2291328 at *8. In her brief, appellate counsel attacked the credibility of Carson and Bigham. She emphasized that Wilson, the only eyewitness, testified that she saw a man strike Mr. Patel once causing him to fall and was surprised at the result of the strike because it did not seem particularly hard. Counsel asked, "Who hits a person one (1) time and thinks of even the slim possibility that he will hit his head with such force that he will die?" *Id.* (quoting appellate brief at 7[2]). Counsel argued in her reply brief that the facts of this case were similar to those in *Nunn*, 601 N.E. 2d 334, where the Indiana Supreme Court reduced a murder conviction to involuntary manslaughter. Counsel then sought transfer to the Indiana Supreme Court on this issue, again relying on *Nunn*. The post-conviction appellate court noted that Mr. Whatley "simply rehashe[d] the sufficiency argument that was already ably presented by counsel on direct appeal," and accordingly held that appellate counsel was not ineffective in her presentation of the issue. *Id.*

This was a reasonable application of *Strickland*. Mr. Whatley points to no evidence or case that appellate counsel should have highlighted that would have produced a different outcome. Thus, Mr. Whatley is not entitled to relief on this issue.

### C. Ineffective Assistance of Counsel (Amended Petition)

Appointed counsel added three new allegations of ineffective assistance of counsel in the amended petition. First, he argues that trial counsel was deficient for failing to present a plea agreement to Mr. Whatley and that if Mr. Whatley had been presented with a plea, he would have accepted it. Second, he argues that trial counsel failed to investigate (though without specifying precisely *what* counsel failed to investigate). Dkt. 45 at 4. Third, he alleges that trial counsel

---

[2] The appellate brief is docketed at 14-4; however, page seven is missing. The Court credits the Indiana Court of Appeal's citation to the record.

prevented Mr. Whatley from exercising his constitutional right to testify at trial by telling Mr. Whatley to "sit there and shut up." Counsel included a verified declaration by Mr. Whatley in support of these claims. Dkt. 45-1.

The respondent argues these three claims are time-barred, procedurally defaulted, and otherwise meritless, and that the Court cannot consider the declaration.

Before bringing a claim in a § 2254 petition, a petitioner must fairly present it "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson*, 745 F.3d at 268. Otherwise, the claim is procedurally defaulted. *Id.* These claims are procedurally defaulted. In his state post-conviction proceedings, Mr. Whatley did not allege ineffective assistance of counsel related to plea negotiations or whether he should testify at trial. Nor did he raise a claim that a more thorough investigation would have resulted in either a plea agreement or better result at trial.[3]

A petitioner may obtain review on the merits of a procedurally defaulted claim if he establishes cause and prejudice to excuse the default or shows that the failure to consider the claim on the merits would result in a fundamental miscarriage of justice. *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013). Mr. Whatley did not acknowledge the procedural default in his amended petition, or in his reply. *See* dkt. 48 at 1 (stating only issues in dispute are whether new claims relate back to his original petition, whether counsel was ineffective, and whether the Court should consider Mr. Whatley's declaration). Consequently, he made no argument that there was any reason to excuse the default.

---

[3] The nature of the "failure to investigate" claim is not entirely clear. To the extent appointed counsel argues that trial counsel should have investigated Mr. Patel's medical condition or cause of death more thoroughly, the Court relies on its previous analysis of this issue.

19

Because the claims are procedurally defaulted, which is fatal to Mr. Whatley's additional claims in his amended petition, the Court need not address respondent's other arguments.

## IV.
## Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." No jurist of reason could disagree that the Indiana Court of Appeals reasonably applied federal law when it analyzed Mr. Whatley's sufficiency of the evidence argument on direct appeal and his ineffective assistance of counsel claims on post-conviction review. Further, no jurist would disagree that the claims presented in Mr. Whatley's amended habeas petition were procedurally defaulted. Therefore, a certificate of appealability is **denied**.

## V.
## Conclusion

Mr. Whatley's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied** and a certificate of appealability shall not issue.

Final Judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date: 12/4/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMES WHATLEY
127725
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Andrew A. Kobe
INDIANA ATTORNEY GENERAL
andrew.kobe@atg.in.gov

Terry Tolliver
Attorney for Petitioner
terry@bmgindy.com